### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION (DAYTON)

In re:                                          Case Number 14-30814

     Mary E. Miller                          Chapter 13

                            Judge Guy R Humphrey

        Debtor.

Mary E. Miller                                  Adversary Number:
252 Chain Ave
Dayton, Ohio 45417

       Plaintiff,

   vs.

Ocwen Loan Servicing
c/o CSC Lawyers Incorporating Service
50 W. Broad Street
Suite 1800
Columbus, Ohio  43215

       Defendant.

### ADVERSARY COMPLAINT AGAINST OCWEN LOAN SERVICING

NOW COMES the Plaintiff, Mary E. Miller ("Debtor" or "Plaintiff"), and for her complaint against Ocwen Loan Servicing ("Ocwen" or "Defendant") alleges as follows:

### <u>INTRODUCTION</u>

1. This is an action for actual damages, punitive damages, costs and attorney fees brought pursuant to 12 U.S.C. 2605 and for breach of contract brought on behalf of the Chapter 13 Estate of Mary Miller.

### <u>JURISDICTION AND VENUE</u>

2.  Jurisdiction over this Adversary Proceeding is proper pursuant to 28 U.S.C. § 1334, 28
    U.S.C. § 157, and the Standing Order of Referral of Title 11 Proceedings to the United
    States Bankruptcy Court for the Southern District of Ohio.

3.  Venue over this Adversary Proceeding is proper pursuant to 28 U.S.C. § 1409.

4.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F),
    (K), and (O).

## PARTIES

5.  Plaintiff reiterates and incorporates all allegations and statement set forth in the preceding
    paragraphs.

6.  Plaintiff, Mary E. Miller is a Debtor in a Chapter 13 Case currently pending before this
    Court, Case Number 14-30814, and is the owner of the real estate located at 27 S.
    Fairgreen Ave., Dayton, Ohio 45416 (the "real estate").

7.  Defendant Ocwen Loan Servicing is alleged to be a secured creditor in the reference
    Chapter 13 case and the current servicer of the mortgage loan on the real estate.

## FACTS

8.  Plaintiff reiterates and incorporates all allegations and statement set forth in the preceding
    paragraphs.

9.  On March 13, 2014, Plaintiff filed a Chapter 13 case in this Court, Case Number 14-
    30814.

10. Prior to the referenced bankruptcy filing the real estate was involved in a fire in which a
    portion of the insurance proceeds were disbursed to Ocwen and a portion of the insurance
    proceeds were disbursed to the City of Trotwood.

11. Plaintiff exhausted all of these funds in making repairs to the real estate and additional repairs were needed to the property after all insurance proceeds were exhausted.

12. After the insurance funds were exhausted, Plaintiff attempted to seek other contractors to complete the work on the property.

13. In the course of seeking other contractors to complete the work, Plaintiff learned that her homeowners insurance was cancelled because Ocwen failed to pay the ongoing real estate taxes.

14. On October 23, 2014, Plaintiff, through Counsel, Andrew J. Zeigler, forwarded a letter to Ocwen Loan Serevcing via certified mail alerting Ocwen of their failure to pay the ongoing real estate taxes.  Exhibit A.

15. On November 26, 2014, Plaintiff paid the past due real estate taxes directly to the Montgomery County Treasurer in the amount of $863.96, which included a late fee of $78.54. Exhibit B.

16. Ocwen responded to Plaintiff's October 23, 2014 letter via letter dated April 7, 2015 stating that all property taxes have been paid and failed to issue Plaintiff a refund for the taxes that she paid.  Exhibit C.

17. Because Ocwen failed to pay the ongoing real estate taxes Plaintiff was unable to obtain another insurance company to provide her homeowners insurance.

18. Since the property was not insured Plaintiff could not find any contractor to complete the necessary work on the property.

19. During this time Plaintiff was forced to rent another residence as the property was not habitable.

20. The total rent Plaintiff has paid from May, 2012 to date is at least $15,103.00.

21. Additionally, Debtor applied for Social Security Benefits and since she was not living in the property it was counted as an asset that is not her principal residence and thus she lost out on SSI benefits for this same time period.  Debtors expected SSI benefits were $700.00 per month.  Debtor therefore lost out on at least $28,700.00 in SSI benefits.

## COUNT 1 – VIOLATION OF RESPA

22. Plaintiff reiterates and incorporates all allegations and statement set forth in the preceding paragraphs.

23. Pursuant to 12 U.S.C. 2605(e)(2):

> (2)Action with respect to inquiry.  Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

> > (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

24. Ocwen violated 12 U.S.C. 2605(e) in failing to respond to Plaintiff's inquiry within 30 days after receipt of the notice of error letter mailed on October 23, 2014.

25. Ocwen violated 12 U.S.C. 2605(e) in failing to make appropriate corrections to the account of Plaintiff including refunding the real estate taxes Plaintiff remitted to the Montgomery County Treasurer.

26. Pursuant to 12 U.S.C. 2605(f), Plaintiff's Chapter 13 Estate is entitled to actual damages, statutory damages and attorney fees for Ocwen's violations of 12 U.S.C. 2605(e).

## COUNT 2 – BREACH OF CONTRACT

27. Plaintiff reiterates and incorporates all allegations and statement set forth in the preceding paragraphs.

28. Pursuant to the "Home Affordable Modification Agreement" Section 4(E), Debtor agreed to pay all escrow payments to Ocwen as part of her regular monthly mortgage payment. Exhibit D.

29. In making this agreement Debtor relied on the representations of Ocwen that all escrow funds would be remitted for real estate taxes and insurance.

30. Ocwen failed to remit the real estate taxes as they were due.

31. As a result Plaintiff's Bankruptcy estate is entitled to actual damages in an amount to be determined by the Court for Ocwen's breach of this agreement.

**WHEREFORE**, having set forth various causes of action against Defendant, the Plaintiff's Bankruptcy Estate prays for the following relief:

1.    Award Actual Damages;

2.    Award Punitive Damages;

3.    Award Costs and reasonable attorneys fees;

4.    Award any further relief this Court deems just.

Respectfully Submitted,

/s/Andrew J. Zeigler
Andrew J. Zeigler, #0081417
Kennel Zeigler LLC
1340 Woodman Drive
Dayton, Ohio 45432
(937) 252-2030
FAX: (937) 252-9425
andrew@kzlawohio.com
*Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I certify that on March 13, 2018 a copy of the foregoing was served on the following registered ECF participants, electronically through the Court's ECF System at the email address registered with the Court.

U.S. Trustee
Jeffrey M. Kellner, Chapter 13 Trustee

And on the following via Certified U.S. Mail:

Ocwen Loan Servicing, LLC, Attn: Cashiering  Department, 1661 Worthington Road, Suite 100, West Palm Beach, Florida  33409

Ocwen Loan Servicing, LLC, Attn: Bankruptcy Dept., P.O. Box 24605, West Palm Beach, Florida 33416-4605

Ocwen Loan Servicing, LLC, c/o Brian Ader, Contract Management Coordinator, 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409

Ocwen Loan Servicing, LLC as a Foreign Limited Liability Company, c/o CSC Lawyers Incorporating Service (Corporation Service Company), 50 W. Broad Street, Suite 1800, Columbus, Ohio  43215

And on the following via Ordinary U.S. Mail:

Mary E. Miller, 27 S Fairgreen Drive, Dayton, Ohio 45416

/s/Andrew J. Zeigler
Andrew J. Zeigler

# *Thompson and DeVeny Co., L.P.A.*
## *Attorneys at Law*

Lester R. Thompson
Dain N. DeVeny

Charles J. Roedersheimer [1]
Andrew J. Zeigler [2]
John F. Kennel [3]

1340 Woodman Drive
Dayton, Ohio 45432
Tel:   (937) 252-2030
Fax:   (937) 252-9425
[1]also admitted in West Virginia
[2]also admitted in Pennsylvania
[3]also admitted in Massachusetts

October 23, 2014

Ocwen
Attn: Customer Care
PO Box 1330
Waterloo, IA 50704-1330

**Certified Mail Tracking #: 7006 2150 0001 5459 5514**

> RE:   *Client: Mary E. Miller*
>       *Bk. Case: 14-30814, S.D. Ohio, West. Div. Dayton*
>       *Account Number:* ▇▇▇▇▇▇
>       *Property: 27 S Fairgreen Drive, Trotwood, Ohio 45416*

Dear Customer Service/Research Department Representative:

Please treat this letter as notice of error and dispute under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), and Truth in Lending Act ("TILA"), 15 U.S.C. §§1641(f)(2) and (g), as implemented by Dodd-Frank Consumer Protections Act regulations, 12 CFR Sections 1024.35 et. seq. The errors in the account that are disputed are as follows:

1.  Montgomery County shows unpaid real estate taxes for tax year 2013 in the amount of $863.96 (see attached bill) this includes a penalty of $78.54. This is an escrowed loan and all real estate taxes are to be paid by Ocwen. Please pay all real estate taxes per the escrow account agreement. Please note that Ms. Miller asserts she is not responsible for paying the penalty as the failure to timely pay these real estate taxes is the fault of Ocwen.

If we do not have a notice of your intent to respond in five (5) days and a response with the requested information within thirty(30) days of the date of receipt of this request our client will pursue claims as authorized under the referenced RESPA and TILA provisions and the implementing regulations of 12 CFR Section 1024 et. seq.

Thank you for taking the time to acknowledge and answer this request. I have included an authorization from the borrower to provide the requested information to me.

Sincerely,

Andrew J. Zeigler

Encl:   Release of Information

PLAINTIFF'S
EXHIBIT
A
PENGAD-Bayonne, N. J.

## Thompson and DeVeny Co., L.P.A

1340 Woodman Drive
Dayton, Ohio 45432
(937) 252-2030

### RELEASE OF INFORMATION

I, Ms. Mary E. Miller, hereby authorize the exchange of information pertaining to me from the
following individuals and or entities checked below to Thompson and DeVeny Co., L.P.A

    \_\_\_\_ State of Ohio Agency -

    \_X\_\_ Mortgage Lender/Broker/Title Agent/Appraiser –

    \_\_\_\_ Social Security Administration

    \_X\_ Financial Institutions/Loan companies

    \_\_\_\_ Utility Company

    \_\_\_\_ Attorney Office

    \_\_\_\_ Medical Records with Physician/Hospital

    \_\_\_\_ Educational Facility/Student Loan Agency

    \_\_\_\_ Other:

                         Ms. Mary E. Miller

                 10/23/2014
                 Date

*CASE NO.* : 14-30814

                 Andrew J. Zeigler
                 Attorney at Law
                 Thompson and DeVeny Co., L.P.A.

## CAROLYN RICE
### MONTGOMERY COUNTY OHIO TREASURER
### 451 WEST THIRD STREET
### DAYTON, OH 45422-1475

**REAL PROPERTY**

**1st HALF 2014**

**DUE 11/30/2014**

PARCEL LOCATION: 27 S FAIRGREEN DR

PARCEL ID:   H33301004 0051

TAX DISTRICT: TROTWOOD-DAYTON CSD

OWNER NAME: MILLER MARY E

BKRP

MILLER MARY E
27 S FAIRGREEN DR
DAYTON OH 45416

STUB #

LEGAL INFORMATION:
56 ALBERT

| Gross Tax Rate | 127.9 | Non Business Credit Factor | .09567 | Acres | 0 |
|---|---|---|---|---|---|
| Reduction Factor | .250579867 | Owner Occupancy Credit Factor | .023917 | Class | R |
| Effective Tax Rate | 95.850835 | | | LUC | 510 |

**APPRAISED VALUE**

| Land | Improvement | Total |
|---|---|---|
| 14,520 | 7,470 | 21,990 |

| TAX VALUES | | CURRENT TAX DISTRIBUTION | |
|---|---|---|---|
| Gross Taxes | 0.00 | Montgomery County | 0.00 |
| Reduction Factor | 0.00 | Dayton Csd | 0.00 |
| Subtotal | 0.00 | Trotwood City | 0.00 |
| Non Business Credit | 0.00 | Dayton Metro Library | 0.00 |
| Owner Occupancy Credit | 0.00 | | |
| Homestead Reduction | 0.00 | Special Assessment | 0.00 |
| CAUV Recoupment | 0.00 | | |
| Farm Rollback | 0.00 | | |
| Current Net Real Estate Taxes | 0.00 | | |
| Current Special Assessments | 0.00 | | |
| Current Adjustments | 0.00 | | |
| Current Net Taxes & Asmts(YEAR) | 0.00 | Total | 0.00 |
| Current Net Taxes & Asmts(HALF) | 0.00 | | |
| Penalties | 78.54 | | |
| Interest | 0.00 | | |
| Adjustments | 0.00 | | |
| Past Due Real Estate Taxes | 785.42 | | |
| Past Due Special Assessments | 0.00 | | |

**TAXABLE VALUE**

| Land | Improvement | Total |
|---|---|---|
| 5,080 | 2,610 | 7,690 |

| HOMESTEAD | CAUV Value | TIF Value |
|---|---|---|
| | 0 | 0 |

**SPECIAL ASSESSMENT**

| Proj# and Description | Delinquent | Current |
|---|---|---|
| 41100-MCD/AP MCD/AQUIFE | 0.00 | 0.00 |
| 11777-APC FEE | 0.00 | 0.00 |
| 11100-D. SEW DELQ CO SEV | 0.00 | 0.00 |
| Total | 0.00 | 0.00 |

TO AVOID 10% PENALTY
PAY ON OR BEFORE

**11/30/14**

If you need a stamped receipt, return entire bill with a self-addressed stamped envelope. No receipt will be returned unless requested.

Your cancelled check is a valid receipt.

| FULL YEAR TOTAL | 863.96 |
|---|---|
| PAYMENTS | |
| OTHER CREDITS | |
| HALF YEAR DUE | 863.96 |

Tax Bill prepared on   10/22/14

Return Bottom Portion with Payment

### CAROLYN RICE
### MONTGOMERY COUNTY OHIO TREASURER
### 451 WEST THIRD STREET
### DAYTON, OH 45422-1475

**REAL PROPERTY**

**1st HALF 2014**

**DUE 11/30/2014**

PARCEL LOCATION: 27 S FAIRGREEN DR

PARCEL ID: H33301004 0051

OWNER NAME: MILLER MARY E

MAKE CHECK PAYABLE TO:

**CAROLYN RICE, MONTGOMERY COUNTY TREASURER**

Tax Bill prepared on   10/22/14
Page/Line:

BKRP

MILLER MARY E
27 S FAIRGREEN DR
DAYTON OH 45416

STUB

PAY THIS AMOUNT

| HALF YEAR: | $863.96 |
|---|---|
| FULL YEAR: | $863.96 |

0000863968 0000863966 00008333010040000514 191



PLAINTIFF'S
EXHIBIT

B



**OCWEN**

**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

04/07/2015                                                                      Loan Number: ▓▓▓▓▓

Mary E. Miller
85 Ridge Rd Apt 41
Brookville, OH 45309

Property Address: 27 S Fairgreen Ave
Dayton, OH 45416

Dear    Mary E. Miller

OCWEN would like to take this opportunity to thank you for your recent communication regarding the above referenced loan. We appreciate the time and effort on your part to bring your concern to our attention. Pursuant to your concern, we have reviewed the loan and below is the recap of our response to the concern raised:

**Concern#1**    You stated that taxes for the year 2013 were delinquent and that a payment in the amount of $863.00 was remitted by you towards the same and requested for a refund.

**Response**    We acquired the servicing rights of the loan on October 3, 2003. Please note that the servicing of this loan was relocated from one Ocwen servicing location to another on January 1, 2014.

A review of our records indicates that the loan is escrowed for taxes and Lender Placed Insurance (LPI). The disbursements would be made as and when they were due.

Even if the loan is not escrowed for taxes and/or insurance, if the taxes payable towards the property are delinquent or if we do not receive proof of insurance on the property for any given period, in order to protect our interest, we disburse the delinquent taxes and/or assess Lender Placed Insurance (LPI) on the property. This will result in a negative escrow balance and an escrow payment will be added to the monthly payment amount in order to collect the escrow advance.

Pursuant to your communication, we performed a tax back search on March 27, 2015 and determined that there were no overpayments made and the second (2nd) installment base amount of $362.06 for the year 2014 is due by July 15, 2015.

We have submitted a request for a copy of the Ocwen's detailed Payment Reconciliation History to be sent to your attention, which reflects all credits and disbursements made on the loan and the resulting loan status, which you will

NMLS # 1852                                                                      RRCMAINLTRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 2



PLAINTIFF'S
EXHIBIT
C



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

OCWEN

---

receive separately. Please allow sufficient time for the request to be processed.

If you believe that you have paid your taxes in the year 2013, please provide us with relevant proof such as tax paid receipts for further research. You may forward the documentation at the address referenced below or fax it to (407) 737-6375.

For any further questions or concerns regarding the loan, you may contact our Bankruptcy department at (888) 554-6599.

We trust the information provided has fully addressed your concern. Please visit our website (www.ocwencustomers.com) which is available 24 hours a day, seven days a week, as many of the answers to your account specific questions may be found there. However, should you have any further questions in regards to this issue, please contact our Research Department at (800) 241-9960. If after speaking with our Research Department you still have questions or concerns, please feel free to contact the OCWEN consumer advocate by email through OCWEN's website or by phone at (800) 390-4656. You may also send written correspondence to the following address:

Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

Sincerely,
Arti Sharma
Research Department
Ocwen Loan Servicing, LLC

NMLS # 1852
RRCMAINLTRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Case 3:18-ap-03015   Doc 1   Filed 03/13/18   Entered 03/13/18 19:39:06   Desc Main
Case 3:16-ap-03113   Doc 1   Document 4/14/16 Page 13 of 21/14/16 16:41:18   Desc Main
Case 3:14-bk-30814   Claim 8   Filed 01/12/15   Desc Main Document   Page 50 of 58

After Recording Return To:
GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID:

This document was prepared by <u>GMAC Mortgage, LLC</u>
[Space Above This Line For Recording Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): MARY E MILLER
Lender\Servicer or Agent for Lender\Servicer ("Lender"): GMAC Mortgage, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 9/30/2003

Property Address *[and Legal Description if recordation is necessary]* ("Property"): 27 S FAIRGREEN AVE DAYTON OH 45416

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on  with Instrument Number  in Book  and/or Page number  of the real property records of MONTGOMERY County, OH. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 27 S FAIRGREEN AVE  DAYTON OH 45416, which real property is more particularly described as follows. "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender\Servicer or Agent for Lender\Servicer. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

{Legal Description – Attached as Exhibit if Recording Agreement}

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

---

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.


PLAINTIFF'S
EXHIBIT
D
PENGAD-Bayonne, N. J.

Case 3:18-ap-03015     Doc 1     Filed 03/13/18     Entered 03/13/18 19:39:06     Desc Main
Case 3:16-ap-03113     Doc 1     Document 04/18 Page 14 of 21 14/16 16:41:18     Desc Main
Case 3:14-bk-30814     Claim 8     Document 01/12/15 Desc Main Document     Page 51 of 58

1.  **My Representations.** I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H.  If I was discharged in a Chapter 7 bankruptcy proceedings subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  TIME IS OF THE ESSENCE under this Agreement;

    B.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 2/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 2/1/2012.

    A.  The new Maturity Date will be: 10/1/2033.

    B.  The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Note. The new Principal balance of my Note will be $89,145.97 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable), the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance". I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the

Case 3:18-ap-03015    Doc 1    Filed 03/13/18    Entered 03/13/18 19:39:06    Desc Main
Case 3:16-ap-03113    Doc 1    Document 14/1 Page 15 of 23 14/16 16:41:18    Desc Main
Case 3:14-bk-30814    Claim 8 Document Filed 01/12/15 Page 15 of 21 Document    Page 52 of 58

interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $25,200.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and until I am required to payoff the Deferred Principal Balance, I will not be required to pay interest or make monthly payments on the deferred amount. In addition, $26,000.00 of the New Principal Balance is eligible for forgiveness (the Deferred Principal Reduction Amount) provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second, and third anniversaries of 11/1/2011, the Lender shall reduce the Deferred Principal Reduction Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance and Deferred Principal Reduction Amount shall be referred to as the "Interest Bearing Principal Balance" and this amount is $37,945.97.

Deferred Principal Reduction Amounts are subject to the Equity Share Arrangement if the Note is paid in full beginning, 30 days after the Modification Effective Date and before the eight year anniversary date after the Modification Effective Date and the property value has increased from the property value $20,000.00 obtained by the lender prior to this Modification Agreement. The lender is entitled to at least 50 percent of any increase in property value of the total deferred principal reduction amount applied to my principal balance less documented capital improvements including receipts that I have made to the property after the Home Affordable Modification Trial Period Plan effective date and the date the loan is fully satisfied. The Lender will obtain a broker's price opinion on this property at the time of the payoff request which may delay the settlement date. I may be required to provide the lender with a copy of the listing agreement, sales contract, and estimated settlement statement (HUD1) if the property is being sold or a copy of the estimated settlement statement if the property is being refinanced so the lender can determine the Equity Share Arrangement amount.

Interest at the rate of 5.00000% will begin to accrue on the Interest Bearing Principal Balance as of 1/1/2012 and the first new monthly payment on the Interest Bearing Principal will be due on 2/1/2012.

My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 5.00000% | 1/1/2012 | $238.76 | $215.72, adjusts periodically | $454.48, adjusts periodically | 2/1/2012 | 10/1/2033 |

The Escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

Case 3:18-ap-03015    Doc 1    Filed 03/13/18    Entered 03/13/18 19:39:06    Desc Main
Case 3:16-ap-03113    Doc 1    Document 04/14/16 Page 16 of 23 14/16 16:41:18    Desc Main
Case 3:14-bk-30814    Claim 8 Document Filed 01/12/15 Page 16 of 21 Document    Page 53 of 58

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance. The amount is subject to the Equity Shares Arrangements if the Note is paid in full prior to the eight year anniversary date after the Modification Effective Date.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of:  (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, mortgage insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund by escrow account.

E.  **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds")

Case 3:18-ap-03015    Doc 1    Filed 03/13/18    Entered 03/13/18 19:39:06    Desc Main
Case 3:16-ap-03113    Doc 1    Document 14/1 Page 7 of 21 14/16 16:41:18    Desc Main
Case 3:14-bk-30814    Claim 8 Document 12/15 Desc Main Document    Page 54 of 58
Document    Page 17 of 21

to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

Case 3:18-ap-03015   Doc 1   Filed 03/13/18   Entered 03/13/18 19:39:06   Desc Main
Case 3:16-ap-03113   Doc 1   Document 4/1/ Page 18 of 21 4/16 16:41:18   Desc Main
Case 3:14-bk-30814   Claim 8   Filed 01/12/1   Desc Main Document   Page 55 of 58
Document   Page 18 of 21

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. If I was discharged in a Chapter 7 bankruptcy proceedings subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period. Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee or my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of Modification Effective Date, any provisions in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note must be waived with respect to any borrower "pay for performance" principal balance reduction payments that are applied to the Loan.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679 MERS. In cases where the loan has been registered with MERS who hass only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and

Case 3:18-ap-03015    Doc 1    Filed 03/13/18    Entered 03/13/18 19:39:06    Desc Main
Case 3:16-ap-03113    Doc 1    Filed 04/11/16 Page 19 of 21 04/14/16 16:41:18    Desc Main
Case 3:14-bk-30814    Claim 8    Filed 04/12/15    Desc Main Document    Page 56 of 58
Document    Page 19 of 21

assigns, MERS has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

N.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii)Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v)any HUD certified housing counselor.

O.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.  If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N shall be referred to as "Documents".  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment.  Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Q.  Important information regarding your loan modification.

**Initial Interest Rate and Initial Payment Amount**

- According to your mortgage payment calculated for long-term affordability, your modified loan will include a deferred balance requiring a balloon payment.
- The amount of your initial monthly payment on your modified loan will be based on three factors:

   - the interest rate reflected in the agreement;
   - the current Interest Bearing Principal Balance of the loan; and
   - the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 261 months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $51,200.00 will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

In addition, $26,000.00, of the Deferred Principal Reduction Balance may remain due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.  As detailed in Section 3C, provided you are not in default on my new payments (equivalent of three full monthly payments due and unpaid on the last day of any month), the Lender shall reduce the Deferred Principal Reduction Balance of my note equal to on-third of the Deferred Principal Reduction Amount on each of the first, second, and third anniversaries of 11/1/2011; thereby reducing the balloon payment that would remain outstanding when your loan term expires.

Case 3:18-ap-03015     Doc 1     Filed 03/13/18     Entered 03/13/18 19:39:06     Desc Main
Case 3:16-ap-03113     Doc 1     Document 04/14/16 Page 20 of 21 14/16 16:41:18     Desc Main
Case 3:14-bk-30814     Claim 8 Document Filed 04/12/15   Desc Main Document     Page 57 of 58
Page 20 of 21

**How Your Monthly Payment Can Change - Balloon Payment**

- You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

---

**Example of Balloon Payment**

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Deferred Principal) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Deferred Principal Balance Due at Maturity | $25,000 |

In the example above, the outstanding loan balance of $25,000 would be due and payable at maturity.

**This summary is intended for reference purposes only.**

---

EACH OF THE BORROWER AND THE "LENDER" ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. BORROWER ALSO ACKNOWLEDGES THE RECEIPT BY INCLUSION IN THIS AGREEMENT, OF SPECIFIC INFORMATION DISCLOSING THE FUNCTION OF A BALLOON PAYMENT.

Case 3:18-ap-03015    Doc 1    Filed 03/13/18    Entered 03/13/18 19:39:06    Desc Main
Case 3:16-ap-03113    Doc 1    Document 4/16 Page 21 of 21 14/16 16:41:18    Desc Main
Case 3:14-bk-30814    Claim 8 Document 01/12/15 age 23 of 21    Desc Main Document    Page 58 of 58

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal) _Mary E Miller_

MARY E MILLER

Date _2/1/2012_

_Witness Kevin Fox_

Print Name _KEVIN FOREMAN_

(Seal) _____

Date _____

Witness _____

Print Name _____

(Seal) _____

Date _____

Witness _____

Print Name _____

(Seal) _____

Date _____

Witness _____

Print Name _____

_____ [Space Below This Line For Acknowledgement] _____

Mortgage Electronic Registration Systems, Inc nominee for Lender

By _Allei Decker_

Authorized Officer

Date _2/9/12_

**LENDER ACKNOWLEDGMENT**